# 14-1972-cv

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

FINANCIAL FEDERAL CREDIT INC.,

*Plaintiff-Appellant,*

— v. —

BERNIE KLUG, AKA Klug Crane Service,

*Defendant-Appellee,*

RAMAR CRANE SERVICES, LLC, RAMAR STEEL SALES, INC.,
RAMAR STEEL ERECTORS, INC.,

*Defendants-Cross-Claimants-Appellees,*

CRANE CONSULTANTS, LLC,

*Defendant-Cross-Defendant-Appellee.*

————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

DEILY & GLASTETTER, LLP
*Attorneys for Plaintiff-Appellant*
8 Thurlow Terrace
Albany, New York 12203
(518) 436-0344

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant Financial Federal Credit, Inc., by its attorneys, Deily & Glastetter, LLP, submit the following identification of corporate parents, subsidiaries and affiliates:

Appellant Financial Federal Credit Inc., a Texas corporation, changed its name to People's United Equipment Finance Corp. in October 2010, which is wholly owned by People's United Financial, Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ...............................................................1

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................2

STATEMENT OF CASE .....................................................................3

STATEMENT OF FACTS ...................................................................5

SUMMARY OF ARGUMENT .............................................................14

ARGUMENT .............................................................................16

    STANDARD OF REVIEW ........................................................16

    POINT I

    The District Court erred when it voided the $450,000.00 Note and
    determined the trade-in of the Tadano crane by Ramar to CraneCon
    was a "nullity" ...............................................................17

    POINT II

    The District Court erred when it determined Ramar was a buyer in
    the ordinary course of business and the transaction between Ramar
    and CraneCon was in the ordinary course of CraneCon's business,
    as a seller of cranes ..........................................................24

    POINT III

    The District Court erred when it, without basis in fact or law,
    reformed the Purchase Order between Ramar and CraneCon.......................28

    POINT IV

    The District Court impermissibly made findings of fact and
    conclusions of law not properly made at the summary judgment
    stage of the litigation ........................................................32

CONCLUSION ...........................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AFA Protective Sys., Inc. v. Lincoln Sav. Bank, FSB,*
  194 A.D.2d 509, 598 N.Y.S.2d 543 (2d Dep't 1993) ............................ 29-30

*AMEX Assurance Co. v. Caripides,*
  316 F.3d 154 (2d Cir. 2003) .................................................15, 28

*Brady v. Town of Colchester,*
  863 F.2d 205 (2d Cir. 1988) .........................................................33

*Bragg v. Bill Heard Chevrolet, Inc.,*
  374 F.3d 1060 (11th Cir. 2004) ....................................................21

*Donahue v. Windsor Locks Board of Fire Commissioners,*
  834 F.2d 54 (2d Cir. 1987) ..........................................................32

*Equipment Finance Group, Inc. v. Traverse Computer Brokers,*
  973 F.2d 345 (4th Cir. 1992) .................................................18, 19

*First Nat'l Bank of Alexander City v.
  Avondale Mills Benvelle Employees Fed. Credit Union,*
  967 F.2d 556 (11th Cir. 1987) ......................................................18

*Gallo v. Prudential Residential Services Limited Partnership,*
  22 F.3d 1219 (2d Cir. 1994) .................................................16, 33

*In re Pubs, Inc. of Champaign,*
  618 F.2d 432 (7th Cir. 1980) .......................................................18

*Investors Ins. Co. of America v. Dorinco Reinsurance Co.,*
  917 F.2d 100 (2d Cir. 1990) .................................................21, 29

*Kunkel v. Sprague Nat'l Bank,*
  128 F.3d 636 (8th Cir. 1997) .................................................19, 20

*Lawrence v. Graham,*
  349 A.2d 271 (Md. Ct. of Special Appeals, 1975) ......................................19

*Layaou v. Xerox Corp.,*
  238 F.3d 205 (2d Cir. 2001) .......................................................16

*Muller v. First Unum Life Ins. Co.,*
  341 F.3d 119 (2d Cir. 2003) .......................................................33

*Murphy v. Empire of Am., FSA*,
    746 F.2d 931 (2d Cir. 1984) .........................................................................20

*O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA*,
    642 F.3d 110 (2d Cir. 2011) ..........................................................................33

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998) ..........................................................................16

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ............................................................................27

*Rohweder v. Aberdeen Production Credit Ass'n*,
    765 F.2d 109 (8th Cir. 1985) .........................................................................19

*Schongalla v. Hickey*,
    149 F.2d 687 (2d Cir. 1945) ..........................................................................29

*Schonholz v. Long Island Jewish Med. Ctr.*,
    87 F.3d 72 (2d Cir. 1996) ..............................................................................16

*United States v. Petroff-Kline*,
    557 F.3d 285 (6th Cir. 2009) .........................................................................20

*Vona v. County of Niagara*,
    119 F.3d 201 (2d Cir. 1997) ..........................................................................33

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) .................30

## Statutes & Other Authorities:

28 U.S.C. § 1291 ...............................................................................................2

28 U.S.C. § 1332 ...............................................................................................1

28 U.S.C. § 1391(a) ..........................................................................................1

Fed. R. App. P. 4(a)(1)(A) ...............................................................................2

Md. Commercial Law § 9-102 .......................................................................23

U.C.C. Article 2 ..............................................................................................19

U.C.C. Article 9 ..............................................................................................23

U.C.C. § 1-201(b)(9).......................................................................................25

U.C.C. § 2-106(1) ....................................................................................19

U.C.C. § 2-401(2) ....................................................................................19

U.C.C. § 2-401(3)(b) ................................................................................19

U.C.C. § 9-102(48) ............................................................................22, 23

U.C.C. § 9-203 ...................................................................................18, 24

U.C.C. § 9-203(b) ....................................................................................14

U.C.C. § 9-204 .........................................................................................14

U.C.C. § 9-301(3)(c) ................................................................................18

U.C.C. § 9-305 .........................................................................................19

U.C.C. § 9-307(e) .....................................................................................18

U.C.C. § 9-315(a)(1) ..........................................................................15, 24

U.C.C. § 9-320(a) .............................................................................15, 24-25

U.C.C. § 9-502 .........................................................................................26

Restatement, Contracts § 504(c) ..............................................................29

4 J. White & R. Summers, Uniform Commercial Code 126 (4th ed. 1995) ...........19

45 American Jurisprudence, § 2 ................................................................29

## PRELIMINARY STATEMENT

This is an appeal by Plaintiff/Appellant Financial Federal Credit Inc. n/k/a People's United Equipment Finance Corp. ("FFCI") from a final judgment of the United States District Court for the Western District of New York (Larimer, J.) (the "District Court") denying FFCI's motion for partial summary judgment; granting the motions for partial summary judgment filed by Defendants/Appellees Ramar Crane Services, LLC, Ramar Steel Sales, Inc. and Ramar Steel Erectors, Inc. (collectively, "Ramar"), and dismissing all of FFCI's claims against Ramar. The District Court's original decision (SPA-17)[1] has not been published.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity jurisdiction).  FFCI is a Texas corporation with its principal place of business in Houston, Texas; the Ramar entities are all New York companies (the members of Ramar Crane Services, LLC are all citizens of New York) with their principal place of business in the state of New York; Crane Consultants LLC ("CraneCon") is a citizen of Maryland (its sole member, Harry Lawrence, is a citizen of Maryland), and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  Venue was proper in the District Court for the Western District of New York pursuant to 28 U.S.C. §1391(a) as the

---

[1] "SPA" refers to the Special Appendix filed herewith.

Western District of New York is the place where the Ramar entities are domiciled and where a substantial part of the events giving rise to the claims at issue occurred.

This Court has jurisdiction to hear appeals from final judgments, orders and decrees of the District Court pursuant to 28 U.S.C. §1291. By Decision and Order dated May 12, 2014, the District Court denied FFCI's motion for partial summary judgment, granted FFCI's motion for default judgment as to Crane Consultants LLC, granted the motions for partial summary judgment filed by Ramar, and dismissed all of FFCI's claims against Ramar. Final Judgment was entered on June 4, 2014 disposing of all of FFCI's claims against Ramar, in conformity with that Decision and Order. FFCI filed its notice of appeal on June 10, 2014. The notice was timely filed under Fed. R. App. P. 4(a)(1)(A). No other appeals were taken from this final judgment. This appeal is from a final judgment that disposes of all parties' claims.[2]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      The District Court impermissibly voided the $450,000.00 promissory note given by CraneCon in connection with Ramar's trade-in of the Tadano crane (defined below) and determined the trade-in of the Tadano crane from Ramar to CraneCon was a "nullity".

---

[2] Final judgment was entered on FFCI's claim against CraneCon, but there is no appeal from that final judgment.

2

2.     The District Court erred when it determined the transaction between Ramar and CraneCon was in the ordinary course of CraneCon's business, as a seller of cranes, and that Ramar was a buyer in the ordinary course of business.

3.     The District Court erred when, without basis in fact or law, it reformed the Purchase Order between Ramar and CraneCon, which was a contract that had been mutually and extensively negotiated between those sophisticated parties.

4.     The District Court impermissibly found facts and issues of law not properly made at the summary judgment stage of the litigation.

## STATEMENT OF CASE

In August, 2010, FFCI filed this action with the District Court for the Western District of New York asserting multiple claims against CraneCon and Ramar arising out of a sophisticated commercial transaction between CraneCon and Ramar involving the sale of a Liebherr crane and associated trade-in of a Tadano crane.  FFCI obtained a duly perfected, first priority security interest in these cranes based on its financing of and security interest in all of CraneCon's inventory, and sought, among other remedies, replevin of the cranes.  In May 2013, after discovery was completed, FFCI moved for partial summary judgment against Ramar seeking an order declaring that FFCI held a perfected security interest in the Liebherr crane (defined below) and Tadano crane superior to any interest of Ramar

or CraneCon.  Ramar moved for partial summary judgment seeking to dismiss all claims of FFCI against Ramar insofar as those claims relate to FFCI's asserted first priority security interest in the Tadano crane, and with respect to the Liebherr crane.

The District Court, in its Decision and Order dated May 12, 2014 (Dkt. No. 112) (the "Decision"):  (1) denied FFCI's motion for partial summary judgment against Ramar; (2) granted FFCI's motion for default judgment against CraneCon and directed the Clerk of the Court to enter judgment in favor of FFCI against CraneCon in the amount of $1,134,938.25, plus $236.44 interest per day from April 7, 2014 to the date of entry of Judgment; (3) granted the motions for partial summary judgment filed by Ramar, dismissing FFCI's claims against Ramar; and (4) found that (a) Ramar purchased the Liebherr crane as a buyer in the ordinary course of business; (b) Ramar took the Liebherr crane free of any security interest held by FFCI; and (c) Ramar's interest in the Tadano crane was superior to any interest claimed by FFCI.  This appeal is from the final judgment dismissing FFCI's claims against Ramar.

## STATEMENT OF FACTS

### The parties and their authorized representatives.

FFCI is a financial services company that specializes in equipment financing, and is authorized to do business in New York State. (A-15).[3] CraneCon is a limited liability company engaged in the business of buying and selling cranes. (A-196). Harry Lawrence, a resident of Maryland, is the sole member of CraneCon. (A-196; A-569). Ramar represents three (3) Rochester, New York companies that are closely held by the Randall family, and are all engaged in the steel fabrication and erection business, having a place of business on Portland Avenue, Rochester, New York. (A-196). Anthony Randall is the chief executive officer for Ramar and William Raetz is Ramar's chief financial officer. (A-196).

### The financial relationship between FFCI and CraneCon.

FFCI provided financing to CraneCon for the acquisition of heavy equipment as inventory between 2005 and 2010. (A-196). In consideration for FFCI providing such financing, CraneCon granted FFCI a security interest in all goods, inventory, equipment, accounts, accounts receivable, chattel paper, documents, instruments, contract rights, general intangibles, investment property, securities, entitlements, deposit accounts, fixtures and other property wherever located now or thereafter belonging to CraneCon, or in which CraneCon has any

---

[3] "A" refers to the Joint Appendix filed herewith.

interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing.  (A-196).  FFCI duly perfected this security interest by filing a UCC-1 Financing Statement (the "Blanket Financing Statement") in the State of Maryland, where CraneCon is organized.  (A-196; A-348).  At all times, FFCI maintained a duly perfected, first priority security interest in and to all assets of CraneCon, including its inventory, as evidenced by the Blanket Financing Statement.  (A-348).

### CraneCon's financing and purchase of the Liebherr crane from C&R Rigging.

On January 29, 2010, FFCI financed CraneCon's proposed purchase for resale of a Liebherr All Terrain Hydraulic Crane, serial number 067112, together with all attachments, accessions and accessories thereto (the "Liebherr crane"), in the original amount of $660,750.00.  (A-197).  This financing was evidenced by a promissory note and corresponding security agreement.  (A-197; A-223-228).  The security agreement stated in pertinent part,

> "Debtor [CraneCon] shall cause Secured Party [FFCI] to have a security interest and lien in/upon the Collateral [Liebherr crane], which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interest other than Secured Party's [FFCI]…"

(A-197; A-224).  In addition to the continuing priority of the Blanket Financing Statement, FFCI filed two (2) separate UCC-1 Financing Statements on January 19, 2010 and February 2, 2010 in the State of Maryland specifically identifying the

Liebherr crane as part of FFCI's collateral. (A-197-198; A-269; A-377).

On February 3, 2010, CraneCon entered into a contract for the purchase of the Liebherr crane from Crane & Rigging of Jacksonville, Inc. ("C&R Rigging"). (A-198). C&R Rigging is a dealer of cranes. (A-198). The contract between CraneCon and C&R Rigging provided for the purchase price of $670,000.00 to be paid with a $20,000.00 deposit paid at contract signing, and the balance payable within ten (10) business days of notice of completion of certain work to be performed by C&R Rigging. (A-198). CraneCon tendered the $20,000.00 deposit for its purchase of the Liebherr crane to C&R Rigging at contract signing. (A-199).

**Marketing the Liebherr crane for resale.**

Subsequent to CraneCon signing the contract to purchase the Liebherr crane from C&R Rigging, but prior to payment in full of the purchase price by CraneCon or any transfer of the title documents by C&R Rigging, CraneCon began to market the Liebherr crane for resale. (A-200). Mr. Lawrence (owner of CraneCon) contacted representatives from Ramar to gauge their interest in purchasing the Liebherr crane from CraneCon. (A-200; A-442-443; A-452).

On March 19, 2010, representatives from Ramar and CraneCon flew down to C&R Rigging in Jacksonville, Florida to inspect the Liebherr crane. (A-200; A-452-453). After C&R Rigging completed the work required by the purchase

contract, CraneCon wired funds on March 25, 2010 in the amount of $303,882.84, which constituted the payoff of the entire amount due to C&R Rigging's lender. (A-199). Between April 5, 2010 and April 7, 2010, CraneCon wired the balance of the sale proceeds to C&R Rigging as full and final payment for the Liebherr crane. (A-199-200; A-230). Upon receipt of full payment, C&R Rigging formally transferred ownership of the Liebherr crane to CraneCon. (A-200; A-232).

## The purchase of the Liebherr crane by Ramar Steel Sales, Inc. from CraneCon.

On March 24, 2010, CraneCon entered into a customer purchase order to sell the Liebherr crane to Ramar for a total price of $775,000.00. (A-201; A-252; A-510). As part of that transaction, Ramar agreed to trade in a Tadano ATF 1500XL (the "Tadano crane"). (A-252; A-510). After extensive negotiations and multiple drafts of a customer purchase order being exchanged, CraneCon and Ramar memorialized their agreement in the final form of CraneCon Customer Purchase Order #031910 (the "Purchase Order") with Ramar Steel Sales, Inc. named as the purchasing entity. (A-200-201; A-238-252; A-495-507; A-510). The signed Purchase Order stated:

> Purchaser [Ramar] may, at its option, return the crane [Liebherr crane] to seller [CraneCon] for $715,000 FOB Rochester as long as notice is given to Seller [CraneCon] by April 1, 2011, subject to the following condition: if the **traded in** Tadano crane remains in the Seller's [CraneCon's] **inventory**, Seller [CraneCon] is not obligated to accept return of the Liebherr crane, except that beginning on March 1, 2011, Seller [CraneCon] is obligated to accept the return of the Liebherr

crane even if the Tadano crane remains in Seller's [CraneCon's] **inventory**.  In any instance of return of the Liebherr crane, Seller [CraneCon] has 14 days to accept delivery and to reimburse purchaser [Ramar].  (emphasis added) (A-201; A-252; A-510).

The Purchase Order stated that Ramar Steel Sales, Inc. would "hold a 45-day promissory note on the **trade-in**, secured by the note and the Tadano ATF 1500XL." (emphasis added).  (A-201; A-252; A-510).

CraneCon executed and delivered a Commercial Promissory Note in the original principal amount of $450,000.00 in favor of Ramar Steel Sales, Inc. (the "Note").  (A-253; A-511).  Several drafts of the Note were exchanged between Ramar and CraneCon at the same time the parties were negotiating the Purchase Order.  (A-238-249; A-495-507).  The terms of the Note were highly negotiated between Ramar and CraneCon, both sophisticated commercial entities.  (A-238-252; A-495-507; A-510).  The Note signed by the parties provided:

> "the undersigned borrower [CraneCon] promises to pay Ramar Steel Sales, Inc. (holder)…the sum of $450,000.00 together with interest on the unpaid principal balance at the rate of ZERO% per annum through May 15th, 2010.  The principal is payable on or before May 15, 2010 and can be paid at any time without penalty and must be paid on demand of Holder at any time after May 15th, 2010, plus accrued interest." (A-203; A-253; A-511).

The final version of the Note did not provide for the 8% interest accrual referenced in the Purchase Order.  (A-203; A-253; A-511).

On March 27, 2010, Ramar wired $796,000.00 to CraneCon, which included the purchase price for the Liebherr crane and three (3) trailers.  (A-205; A-234).

After this payment was made, the Liebherr crane was delivered to Ramar in April, 2010. (A-205). On June 8, 2010, Mr. Raetz (CFO of Ramar) registered the Liebherr crane in the name of Ramar Steel Sales, Inc. and filed the New York State form DTF-802 paying sales tax on Ramar's purchase of the Liebherr crane in the amount of $26,000.00. (A-206; A-358-360). The tax was calculated at 8% of the listed purchase price of $325,000.00 (i.e., the purchase price of the Liebherr crane of $775,000.00 less the trade in value of the Tadano crane at $450,000.00). (A-252-253; A-358-360; A-510-511). On July 12, 2010, Mr. Raetz accepted and acknowledged CraneCon's invoice showing the trade-in of the Tadano Crane. (A-614-615).

**CraneCon's default.**

In July, 2010, CraneCon defaulted on its obligations by failing to pay amounts owed to FFCI. (A-209). Upon CraneCon's default, the balances on all CraneCon loans with FFCI were accelerated and FFCI was entitled to immediate possession of the collateral. (A-209). All of CraneCon's outstanding loans with FFCI, including, but not limited to, the acquisition loan for the purchase of the Liebherr crane were cross-collateralized and cross-defaulted pursuant to FFCI's loan documentation. (A-208-209). By July, 2010, CraneCon had not made any payment to Ramar on the Note. (A-206). Ramar made no written demands on CraneCon for payment of the $450,000.00, and did not contact its attorney to

enforce its rights under the Note.  (A-206).  Ramar did not make a written declaration to default the Note, or notify CraneCon that Ramar was going to enforce its purported security interest and retain the Tadano crane to satisfy said Note.  (A-206).  Mr. Randall admitted that Ramar did not provide any notices to third parties that it was retaining the Tadano crane in satisfaction of its lien, and did not publish a notice of sale for same as required by the Uniform Commercial Code ("U.C.C.").  (A-462).

FFCI, by counsel, sent a notice of acceleration and default to CraneCon on August 24, 2010.  (A-209-210; A-340-341).  A copy of that notice was also sent to Ramar advising them of the existing defaults of CraneCon and FFCI's demand for possession of certain collateral, including the Liebherr crane and the Tadano crane.  (A-340-341).  Notwithstanding the foregoing, after recognizing its failure to perfect its lien, Ramar filed a U.C.C.-1 financing statement attempting to perfect its claimed security interest in the Tadano crane.  (A-210; A-343-347).  After FFCI's demand letter was received, Ramar amended its New York State tax return and made a self assessment on its records for tax purposes in the amount of $5,000.00.  (A-206-207).

**Extraordinary aspects of the transaction between Ramar and CraneCon.**

The buy-back or repurchase obligation concerning the Liebherr crane and deferred credit for the trade-in of the Tadano crane provided for in the Purchase

11

Order were extraordinary provisions outside the ordinary course of business of CraneCon as well as in the crane industry. (A-134). Under the terms of the Purchase Order, Ramar financed CraneCon's purchase of the Tadano crane, and attempted to perfect a security interest therein. (A-476-477). Ramar had never sold a crane where it provided financing or held paper from a purchaser prior to entering into the Purchase Order with CraneCon. (A-450).

Anthony Randall testified at his deposition that Ramar "had not purchased a crane before where he [Ramar] had the right to compel the purchaser (or seller of the crane) to repurchase it from him in a stated period of time." (A-458-499). He also testified that Ramar had never taken a promissory note for credit due on a trade-in. (A-461). Notwithstanding, Mr. Randall (CEO of Ramar) testified that he knew, prior to signing any contract with CraneCon, that Ramar would have to pay for the Liebherr crane in full since Harry Lawrence told him he would need a month or two to get the money for the trade-in of the Tadano crane. (A-457). Bill Raetz (CFO of Ramar) testified that he understood the Note to be a binding promise by CraneCon to pay $450,000.00 to Ramar Steel Sales, Inc. (A-477). Mr. Lawrence testified that he believed he had obtained rights in and to the Tadano crane upon execution and delivery of the Note. (A-592-593). When asked whether he agreed that the trade-in of the Tadano crane was never consummated – Mr. Lawrence testified, "I wouldn't say that. … A promissory note never got paid

...".  (A-593).  Mr. Lawrence also testified that subsequent to signing the Purchase Order and Note, Ramar agreed to allow him to store the Tadano crane on its lot. (A-593).  A fact not disputed by Ramar.  (A-480-487; A-543-563; A-637-667; A-699-708).

**FFCI's expert witness – John J. Hanretty.**

FFCI engaged John J. Hanretty as an expert witness and, based upon his expertise, he opined as to the usual and customary practices in the business of a seller of cranes.  (A-126-127).  Mr. Hanretty is the principal of John J. Hanretty Equipment, Inc. located in Norfolk, VA, which is a computer-based, heavy construction equipment brokerage company that was incorporated in August, 1985. (A-193-194).  He has been a broker, buyer and seller of used cranes since his company incorporated.  (A-193-194).  Prior to providing his opinion, Mr. Hanretty reviewed the pleadings, discovery, responses and documents surrounding the purchase of the Liebherr crane by CraneCon from C&R Rigging and the subsequent purchase of the Liebherr crane and trade-in of the Tadano crane by Ramar, including the Purchase Order and Note executed by Ramar and CraneCon. (A-129-134).  In his report, Mr. Hanretty opined that the repurchase obligation and deferred credit for the trade-in of the Tadano crane as evidenced in the Purchase Order were outside the standard trade and practice for sellers of used cranes in the industry.  (A-134).

Ramar did not identify an expert witness to refute Mr. Hanretty's opinion, and instead relied on the testimony given by a fact witness – Mr. Lawrence of CraneCon.  (A-117; A-639-660).  Mr. Lawrence averred in an affidavit that the transaction between CraneCon and Ramar Steel Sales, Inc. was not a customary, ordinary business transaction of CraneCon.  (A-138).  Mr. Lawrence testified that his invoice is the mechanism of conveyance, and it showed a trade-in of the Tadano crane.  (A-585).  The invoice clearly showed the trade-in of the Tadano crane for a credit back to Ramar of $450,000.00.  (A-585; A-597).  Mr. Lawrence testified that the buy-back or repurchase provision included in the Purchase Order was not a standard term and that historically he had utilized a promissory note, like the Note used in its transaction with Ramar, in only 5-10% of his transactions in the past.  (A-204; A-471).

## SUMMARY OF ARGUMENT

Pursuant to U.C.C. §§9-203(b) and 9-204, CraneCon acquired an interest in the Tadano crane when CraneCon and Ramar executed the Purchase Order and Note on March 24, 2010.  Pursuant to the Purchase Order, Ramar traded in and conveyed the Tadano crane to CraneCon for resale and took back the Note of even date.  On that date, the Tadano crane became inventory of CraneCon, and the first priority blanket security interest maintained by FFCI and evidenced by the Blanket Financing Statement automatically attached by operation of law.

Pursuant to U.C.C. §9-315(a)(1), FFCI's first priority security interest in and to the Liebherr crane continues, notwithstanding the sale of the Liebherr crane from CraneCon to Ramar, because Ramar is not a "buyer in the ordinary course of business" ("BIOCB") as provided under U.C.C. §9-320(a). Ramar cannot be a BIOCB because the transaction between CraneCon and Ramar Steel Sales, Inc. was not in the usual, customary practices in the kind of business in which CraneCon is engaged, as a seller of cranes, and did not comport with the usual, customary practices and standard in the crane industry.

The District Court committed reversible error when it reformed the Purchase Order into two (2) separate transactions. A contract may be reformed only to correct a material, mutual mistake or fraud. *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003). There was no mutual mistake or fraud by Ramar or CraneCon and no allegation that the Purchase Order misrepresented their intent. Rather, the Purchase Order and Note were heavily negotiated by Ramar and CraneCon. It is clear on the face of those documents that the transaction was one, integrated transaction that simultaneously included Ramar's purchase of the Liebherr crane and its trade-in of the Tadano crane.

The District Court made findings of fact in clear contravention of its task in deciding whether genuine issues of material fact exist between the competing summary judgment motions. It also (i) rejected undisputed, material facts set forth

15

in the record, including the existence of the Note and the terms of the Purchase Order, without legal basis, and (ii) seemingly failed to consider, discount or distinguish the expert opinion of Mr. Hanretty.

## ARGUMENT

## STANDARD OF REVIEW

The applicable standard of review of the District Court's denial of FFCI's partial summary judgment motion, grant of Ramar's motions for partial summary judgment and dismissal of FFCI's claims against Ramar is *de novo* review. *Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2d Cir. 2001) *citing Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764 (2d Cir. 1998).  In doing so, this Court must consider the evidence in a light most favorable to FFCI, drawing all reasonable inferences in its favor.  *See id*. at 209.  A court may only grant summary judgment "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support [his] case is so slight."  *See id. citing Gallo v. Prudential Residential Services Limited Partnership*, 22 F.3d 1219, 1224 (2d. Cir. 1994).  Reversal of the District Court's grant of summary judgment is "required if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably by resolved in favor of either party."  *See id. citing Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 77 (2d Cir. 1996)(internal quotation marks omitted).

16

# POINT I

## <u>The District Court erred when it voided the $450,000.00 Note and determined the trade-in of the Tadano crane by Ramar to CraneCon was a "nullity".</u>

FFCI moved for partial summary judgment on its claim that it maintained a perfected security interest in the Tadano crane as inventory of CraneCon, superior to any interest claimed by Ramar. (A-112-192). In denying FFCI's motion, the District Court stated that "CraneCon never obtained title to, or possession of the Tadano crane … never made any payments on the $450,000.00 promissory note that it gave to Ramar, and thus, the contemplated sale never occurred; it was, in the end, a nullity." (SPA-13). This statement is erroneous for several reasons: (1) under the U.C.C., physical possession is not necessary for a security interest to attach, and thus CraneCon did not need physical possession of the Tadano crane to offer it for resale[4]; (2) failure to make payments under the Note constituted a breach of its terms, not a legal basis to avoid it altogether; and (3) the statement completely contradicted the facts surrounding the transaction.

Under the U.C.C., a security interest is enforceable against the debtor and third parties, and attaches when the following requirements are met: (1) either the collateral has come into the possession of the secured party, or the debtor has

---

[4] Notwithstanding physical possession not being a prerequisite to the attachment of FFCI's security interest in the Tadano crane, Mr. Lawrence testified that subsequent to signing the Purchase Order and Note, Ramar agreed to allow him to store the Tadano crane on its lot while CraneCon attempted to sell same. (A-593).

signed a security agreement that contains a description of the collateral; (2) the secured party has given value to the debtor; and (3) the debtor has acquired rights in the collateral.[5] *See* U.C.C. §9-203. The District Court determined that CraneCon did not acquire rights in the Tadano crane, and stated that "the Tadano crane was never a part of CraneCon's inventory" because it [CraneCon] "never took possession of or title to the crane. The Tadano crane never became CraneCon's to sell." (SPA-15). This determination is incorrect and conflicts with the U.C.C. as well as the intent of the parties as contemplated and expressly provided under the Purchase Order and the Note.

The phrase "rights in the collateral" in §9-203 is not defined in the U.C.C. *See In re Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir. 1980); *Equipment Finance Group, Inc. v. Traverse Computer Brokers*, 973 F.2d 345, 348 (4th Cir. 1992); *First Nat'l Bank of Alexander City v. Avondale Mills Benvelle Employees Fed. Credit Union*, 967 F.2d 556, 559 (11th Cir. 1987). It is well settled law, however, that "rights in the collateral" may be an interest less than outright

---

[5] Section 9-301(3)(c) of the U.C.C. states, in relevant part, the law…of the jurisdiction in which the debtor [CraneCon] is located governs the perfection and the effect of perfection or non-perfection of the security interest. Section 9-307(e) further states that "[a] registered organization that is organized under the law of a State is located in that State." *See* U.C.C. §9-307(e). In this case, CraneCon is organized under the laws of, and maintains a place of business in the State of Maryland. (A-196). Accordingly, Maryland's Commercial Law, Titles 1-10, which contains Maryland's enactment of the U.C.C. are applicable to this case, and for the purposes of this appeal, all references to the U.C.C. shall refer to Maryland's Commercial Law, Titles 1-10. Except as otherwise noted, Maryland's U.C.C. and the Official Comments thereto are identical to New York's U.C.C.

ownership, but must be more than the mere right of possession. *See Kunkel v. Sprague Nat'l Bank*, 128 F.3d 636, 640 (8th Cir. 1997) *citing* 4 J. White & R. Summers, Uniform Commercial Code 126 (4th ed. 1995)("It follows that almost any 'rights in the collateral' will suffice under 9-203."); *see also Equipment Fin. Group, Inc., supra.* (bald possession is not sufficient to give a debtor's rights in collateral); *Rohweder v. Aberdeen Production Credit Ass'n*, 765 F.2d 109, 112 (8th Cir. 1985) (mere possession of goods is not a sufficient interest to permit attachment of a security interest); U.C.C. §9-305 (The debtor need not have possession in order to pledge the property; the U.C.C. expressly contemplates that a secured party may retain possession of the collateral).

Article 2 of the U.C.C. is instructive in determining CraneCon's rights in the Tadano crane. A "sale" is the passing of title from buyer to seller for a price. *See* U.C.C. §2-106(1). "Unless otherwise explicitly agreed, title to goods (including inventory) passes to the buyer at the time and place at which the seller completes performance with respect to physical delivery of the goods…even though a document of title is to be delivered at a different time or place; …" *See* U.C.C. §2-401(2). Where delivery of goods is made without moving the goods, title passes from buyer to seller at the time the parties contracted if the goods are identified at that time. *See* U.C.C. §2-401(3)(b); *see also Lawrence v. Graham*, 349 A.2d 271 (Md. Ct. of Special Appeals, 1975)(whatever reason purchaser may have had for

not changing the title to his name, his right of ownership in the car was not defeated because of this fact). "Delivery is not required for a 'sale' to take place, and the buyer does not even need any right to possession of the goods in question." *See Kunkel v. Sprague Nat'l Bank*, 128 F.3d 636, 641 (8th Cir. 1997)(court held that delivery of cattle occurred, even though buyer was still obligated to pay for the cattle, and even though seller retained possession of the cattle on buyer's behalf). Here, it is undisputed that Ramar completed performance under the Purchase Order and took back the Note instead of immediate credit for the Tadano crane. (A-234; A-252-253; A-510-511). Mr. Lawrence testified that Ramar agreed to allow him [CraneCon] to store the Tadano crane on its lot pending the sale. (A-593). This fact has not been disputed by Ramar, and was ignored by the District Court. (SPA-1-17; A-480-487; A-543-563; A-637-667; A-699-708). Accordingly and although physical possession of the Tadano crane remained with Ramar, delivery of the Tadano crane from Ramar to CraneCon occurred, albeit constructively, and CraneCon was obligated to pay the Note.

It is well settled that consummation of a transaction occurs upon the signing of the contract. *See Murphy v. Empire of Am., FSA*, 746 F.2d 931, 934 (2d Cir. 1984); *see also United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009)(consummation occurs when borrower signs loan documents and becomes obligated to pay, despite the fact that loan may be contingent on lender's approval);

*Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1066 (11th Cir. 2004)("well-reasoned case law" supported plaintiff's interpretation that consummation occurred when he signed the relevant contract).   Under New York law, the "parol evidence rule bars proof of prior oral statements offered to refute the unambiguous terms of a written, integrated contract."  *See Investors Ins. Co. of America v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990)(holding that extrinsic evidence cannot be used to "vary the plain meaning of" a fully integrated contract).

There is no dispute that the signed Purchase Order exists as a fully integrated contract reflecting the negotiated, agreed terms between Ramar and CraneCon regarding the sale of the Liebherr crane and trade-in of the Tadano crane.  (A-201; A-252; A-510).  The Purchase Order characterized the transaction concerning the Tadano crane as a transfer to CraneCon's inventory.  (A-201; A-252; A-510).

The Purchase Order, more specifically the repurchase obligation, unequivocally characterized the Tadano crane as part of CraneCon's inventory because it contained language that stated:  "if the traded in Tadano crane remains in the Seller's [CraneCon's] inventory, Seller [CraneCon] is not obligated to accept return of the Liebherr crane, except that beginning on March 1, 2011, Seller [CraneCon] is obligated to accept the return of the Liebherr crane even if the Tadano crane remains in Seller's [CraneCon's] inventory."  (A-252; A-510).  With

such language, Ramar and CraneCon acknowledged the Tadano crane became a part of CraneCon's inventory at the signing of the Purchase Order and Note. The trade-in of the Tadano crane was also critical to the repurchase obligation negotiated between Ramar and CraneCon and memorialized in the Purchase Order. (A-252; A-510). Ramar could only force a repurchase of the Liebherr crane by CraneCon for approximately one year after the contract if the Tadano crane was not in CraneCon's inventory (and thus unsold). (A-252; A-510). This was a clearly bargained for possession, which the District Court erroneously concluded was a "nullity."

Contrary to the District Court's insistence that possession of the Tadano crane was required for it to be considered a part of CraneCon's inventory, and despite the fact that the parties deemed the Tadano crane to be in CraneCon's inventory, the plain reading of its definition at U.C.C. §9-102(48) does not mandate possession. Instead, "inventory" is defined under the U.C.C. as goods, other than farm products, which:

> (A) are leased by a person as lessor;
> (B) are held by a person for sale or lease or to be furnished under a contract of service;
> (C) are furnished by a person under a contract of service; or
> (D) consist of raw materials, work in process, or materials used or consumed in a business.

*See* U.C.C. §9-102(48).[6]

Mr. Lawrence testified that he believed he had obtained rights in and to the Tadano crane upon signing the Purchase Order and the Note.  (A-592-593).  And when asked whether he agreed that the trade-in of the Tadano crane was never consummated, Mr. Lawrence testified, "I wouldn't say that. … A promissory note never got paid, …"  (A-593).  Payment in part or full of the Note was not a condition-precedent to consummation of the Purchase Order.  (A-252-253; A-510-511).  Instead, CraneCon's failure to fulfill its obligations under the Note, including failing to make payment to Ramar, constituted a breach of the consummated Purchase Order and Note, nothing more.  (A-252-253; A-510-511).  Ramar's belated filing of a U.C.C. financing statement in August, 2010 further supports the parties' express intention that the Tadano crane was transferred to CraneCon's inventory.  (A-210; A-343-347).  There is no business purpose for such a filing otherwise.

To further illustrate the error in the District Court's reasoning, it is important to note that CraneCon never took physical possession of the Liebherr crane from C&R Rigging prior to selling it to Ramar.  (A-205).  CraneCon held the Liebherr crane for sale to third parties, including Ramar, which was the precise nature of

---

[6] The definition of inventory did not dramatically change with the enactment of revised Article 9. In the 2001 revisions to the U.C.C. Article 9, §9-102(48), the only modification made was to include the word "lease" in subpart (B).  *See* Official Comment to Md. Commercial Law §9-102.

CraneCon's business as a seller of cranes. (A-200; A-442-443; A-452). Even though CraneCon never took physical possession of the Liebherr crane prior to selling it to Ramar, CraneCon acquired rights to the Liebherr crane upon signing the contract to purchase and tendering the deposit to C&R Rigging, and thus, was able to offer it for sale to third party purchasers like Ramar. (A-198-199). No claim has been made that CraneCon did not hold the Liebherr crane as inventory. (A-198-205). Likewise, CraneCon acquired rights in and to the Tadano crane when CraneCon and Ramar signed the Purchase Order and Note on March 24, 2010. (A-252-253; A-510-511). Thus, FFCI's Blanket Financing Statement automatically attached to the Tadano crane pursuant to U.C.C. §9-203.

## POINT II

### The District Court erred when it determined Ramar was a buyer in the ordinary course of business and the transaction between Ramar and CraneCon was in the ordinary course of CraneCon's business, as a seller of cranes.

Generally, "a security interest … continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest …" *See* U.C.C. §9-315(a)(1). The only exception to this general rule, however, provides that "a buyer in the ordinary course of business … takes free of a security interest … even if the security interest is perfected and the buyer knows of its existence". *See* U.C.C. §9-

320(a).  As defined in U.C.C. §1-201(b)(9), a buyer in the ordinary course of business ("BIOCB") means:

> A person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. **A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices** [...] only a buyer that takes possession of the goods from the seller under Title 2 may be a buyer in the ordinary course of business. A person that acquires goods in a transfer involved or as security for or in total or partial satisfaction of a money debt is not a buyer in the ordinary course of business.

*See* U.C.C. §1-201(b)(9)(emphasis added).  Whether Ramar is a BIOCB as defined in U.C.C. §1-201(b)(9) is critical to whether FFCI maintains a security interest in the Liebherr crane despite its transfer by CraneCon to Ramar.  FFCI's security interest in the Liebherr crane remains perfected despite the transfer from CraneCon to Ramar unless Ramar is a BIOCB.

Ramar cannot be a BIOCB as defined in U.C.C. §1-201(b)(9) because the transaction between CraneCon and Ramar Steel Sales, Inc. was not in the usual, customary practices in the kind of business in which CraneCon (the seller) is engaged, as a seller of cranes.  Moreover, the transaction between Ramar and CraneCon also did not comport with the usual, customary practices standard to the industry.  The Purchase Order contained two unusual provisions that standard sale transactions do not include – (a) a loan by the Ramar [the purchaser] to CraneCon

[the seller] deferring immediate credit for the trade-in of the Tadano crane, and (b) the repurchase obligation on the Liebherr crane.  (A-252; A-510).  In its Decision, the District Court de-emphasized these aberrant provisions by stating that "the fact that some aspects of the contract may have been somewhat unusual does not take it outside the scope of §1-209(9)."  (SPA-11).  The District Court, however, conspicuously failed to provide any legal basis whatsoever for this statement. (SPA-1-17).  It also found no evidence that Ramar knew of FFCI's security interest in the Liebherr crane at the time of the sale.  (SPA-12).  Yet, this finding conflicts with the primary purpose of the U.C.C., which is a "notice filing" system that charges the parties to a commercial transaction with a duty to make inquiry.  *See* Official Comment to U.C.C. §9-502 (duty of further inquiry).  FFCI's Blanket Financing Statement provided requisite statutory notice to third parties, including Ramar, under the U.C.C.  (A-196; A-348; A-197-198; A-269; A-377).

The District Court failed to consider and/or give any weight to FFCI's uncontroverted expert's testimony.  In fact, the Decision only made passing reference to Mr. Hanretty's report – but no analysis was provided or discussed. (SPA-8).  Ramar questioned the admissibility of Mr. Hanretty's testimony in its moving papers, but the Decision failed to address or even mention it.  (A-639-667; SPA-1-17).  It is the proper role of the District Court to consider the admissibility of expert testimony to determine whether summary judgment is warranted:

> Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law,' Fed. R. Civ. P. 56(c), it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment. Although disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact finder to resolve, questions of admissibility are properly resolved by the court.

*Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997)(internal citations omitted; alteration in original).   However, the decision is devoid of any analysis with respect to the expert testimony submitted.

Despite the District Court's apparent decision to either admit and reject <u>or</u> ignore the expert testimony presented, a fact issue remains with respect to whether Ramar is a BIOCB and specifically whether the transaction between Ramar and CraneCon falls within the customary or ordinary practice of CraneCon as well as in the crane industry generally.   Although, the District Court acknowledged Mr. Hanretty's opinions, i.e., that the Purchase Order contained a highly unusual buy-back provision, which compelled CraneCon to repurchase the Liebherr crane as well as the unusual "trade-in" provision whereby Ramar took back the Note, rather than receive immediate credit for the trade-in of the Tadano crane, it still concluded that the deal between CraneCon and Ramar comported with the usual or customary practices of CraneCon as a seller of cranes as well as practices within the crane industry generally without legal basis.  (SPA-11).  Despite this finding, the District Court gave no reference or legal authority as to the basis for that

conclusion.   (SPA-11-16).   The District Court referenced Mr. Lawrence's testimony claiming that CraneCon has used a "buy-back" provision previously, and that "the terms of any particular deal vary transaction by transaction," and that "there's no single standard practice".  (SPA-10-11).  The District Court did not address Mr. Lawrence's conflicting testimony that he utilized a promissory note like the Note used in CraneCon's transaction with Ramar, only 5-10% of the time in all of his past dealings and transactions, which meant that he did not structure CraneCon's transactions like the one with Ramar or use a promissory note in 90-95% of the transactions he was involved in.  (A-204; A-471).  An action that is only performed 5-10% of the time is clearly not customary or ordinary practice; indeed, it is quite the opposite.  Accordingly, there are material facts in dispute that would require further evidence before a fact-finder could make a determination with respect to whether Ramar is a BIOCB.

## POINT III

### The District Court erred when it, without basis in fact or law, reformed the Purchase Order between Ramar and CraneCon.

The District Court impermissibly reformed the Purchase Order between the parties and analyzed it as two separate and independent transactions.  Reformation is appropriate only to correct a material, mutual mistake or fraud. *AMEX Assurance Co. v. Caripides*, 316 F.3d 154, 161 (2d Cir. 2003).  "A contract can be reformed on the basis of mutual mistake if the writing does not accurately reflect

the mutual intention of the parties." *Investors Ins. Co. of America v. Dorinco Reins. Co.*, 917 F.2d 100, 105 (2d Cir. 1990).  Here, there was no fraud or mutual mistake by either Ramar or CraneCon with respect to the language contained in the Purchase Order and, as such, it should not have been reformed.  Neither party alleged that the Purchase Order misrepresented their intent.  (A-195-210; A-252; A-510).  Nevertheless, in the unique circumstances where a written agreement warrants reformation, a court does not change the terms of the contract made by the parties; it merely declares what those terms were, that is, it makes the writing express the real agreement or intention of the parties.  *Schongalla v. Hickey*, 149 F.2d 687, 690 (2d Cir. 1945) *citing* Restatement, Contracts 504(c); 45 American Jurisprudence, p. 584, §2.

It is undisputed that the Purchase Order memorialized Ramar's and CraneCon's heavily negotiated deal, which included a deferred credit from the trade-in of the Tadano crane and a repurchase obligation for the Liebherr crane.  (A-201; A-252; A-510).  "It is settled that 'when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add or vary the writing.'" *AFA Protective Sys., Inc. v. Lincoln Sav. Bank, FSB,* 194 A.D.2d

509, 598 N.Y.S.2d 543, 544 (2d Dep't 1993) (*quoting W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990)).

The Purchase Order provided for one (1) complete, integrated transaction between Ramar and CraneCon supplying a purchase price for the Liebherr crane in the amount of $775,000.00, and a trade-in price for the Tadano crane of $450,000.00. (A-252; A-510). Paragraph 2(c) of the Purchase Order further provided that CraneCon shall have a repurchase obligation for the Liebherr crane. (A-252; A-510). That paragraph incorporated the trade-in of the Tadano crane as an integrated part of the repurchase obligation by stating that if the Tadano crane was still in CraneCon's inventory, Ramar was restricted from exercising the repurchase option until March, 2011 based on the trade-in of the Tadano crane. (A-252; A-510). Given the express language of the Purchase Order, it is clear that Ramar and CraneCon intended the transfer of the Liebherr crane and the Tadano crane simultaneously in a single transaction. Thus, the Purchase Order fully integrated the trade-in of the Tadano crane as a condition for the repurchase of the Liebherr crane. (A-252; A-510).

The Purchase Order also specifically and repeatedly characterized the transfer of the Tadano crane as a trade-in. (A-252; A-510). The Purchase Order clearly intended to "transfer" the Tadano crane to CraneCon since the repurchase obligation required CraneCon to repurchase the Liebherr crane for a sum certain

unless the Tadano crane remained a part of CraneCon's inventory.    (A-252; A-510).  Such language presupposes a transfer of the Tadano crane to CraneCon for resale.  The fact that the payment was "deferred" – which meant that Ramar was required to pay the entire purchase price for the Liebherr crane upfront and provided CraneCon forty-five (45) days to credit the trade-in value for the Tadano crane as evidenced by the Note – does not diminish the fact that the purchase of the Liebherr crane and trade-in of the Tadano crane by Ramar were accomplished in one (1) complete, integrated transaction.

The terms of that transaction were extensively negotiated by and between Ramar and CraneCon.  (A-200-203).  William Raetz testified that it was Ramar's intention to finance CraneCon's purchase of the Tadano crane, and take a security interest therein.  (A-204; A-476-477).  Mr. Raetz also testified that he understood the Note to be a binding promise by CraneCon to pay $450,000.00 to Ramar.  (A-204; A-477).   Likewise, Mr. Lawrence testified that he believed he had obtained rights in the Tadano Crane pursuant to the Purchase Order.  (A-592-593).  Mr. Lawrence also testified that his invoice showed a trade-in of the Tadano crane.  (A-585).  Ramar's own actions in filing the New York State tax form DTF-802 in June, 2010 and paying sales tax in the amount of $26,000.00 further demonstrated one integrated transaction.  (A-206; A-358-360).  Specifically, the DTF-802 form showed a sales tax payment equal to 8% of the net purchase price for the Liebherr

crane, which it calculated as $325,000.00 (i.e., full purchase price for the Liebherr crane ($775,000.00) less the value of the trade-in of the Tadano crane ($450,000.00) = $325,000.00).  (A-252-253; A-510-511; A-358-360).  If Ramar intended the Purchase Order to reflect two (2) separate transactions as the District Court suggested, it would have paid 8% of the full purchase price for the Liebherr crane ($775,000.00) or $62,000.00.

It is clear from the unambiguous terms of the Purchase Order as well as the unequivocal testimony of the representatives of Ramar and CraneCon, there was no material, mutual mistake between them – the Purchase Order provided for one, integrated transaction that included the purchase of the Liebherr crane and the trade-in of the Tadano crane.  The District Court had no factual or legal basis to reform the Purchase Order into two (2) separate transactions and void an existing promissory note obligation.  The Decision failed to cite to any case law or statutory authority to support the reformation of the parties' express intent for one, integrated transaction into two separate sales transactions.

**POINT IV**

**The District Court impermissibly made findings of fact and conclusions of law not properly made at the summary judgment stage of the litigation.**

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 58 (2d Cir. 1987)(internal quotations

omitted); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d. Cir. 1994). If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See e.g., Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). The District Court's task on a summary judgment motion – even in a non-jury case – is to determine whether genuine issues of material fact exist for trial, not to make findings of fact. *O'Hara v. National Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) *citing Vona v. County of Niagara*, 119 F.3d 201, 205 n. 4 (2d Cir. 1997). Despite those restrictions, the District Court made specific findings in its Decision as follows: (a) Ramar purchased the Liebherr crane as a buyer in the ordinary course of business; (b) Ramar took the Liebherr crane free of any security interest held by FFCI; and (c) Ramar's interest in the Tadano crane is likewise superior to any interest claimed by FFCI. (SPA-16).

A district court may draw permissible factual inferences in favor of the nonmoving party; however, inquiry is limited to determining whether questions of fact exist for trial, unless the parties otherwise stipulate or agree to a "summary trial" or "bench trial on the papers". *Id. citing Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003). Here, no such stipulation or agreement was made by Ramar and FFCI, so the District Court was limited to determining

whether questions of fact exist for trial. This was not done here. (SPA-1-17). The District Court rejected or discarded undisputed, material facts in the record making contrary findings. (SPA-1-17). It is undisputed by the parties that the Note was signed and delivered by CraneCon to Ramar, rather than immediate credit given for the trade-in of the Tadano crane. (A-252-253; A-510-511). In fact, Randall testified "we know we had to pay for this [Liebherr crane] in full prior to deciding to take the crane." (A-201; A-457). The signed Note on its face presupposes that Ramar traded in the Tadano crane to CraneCon. (A-252-253; A-510-511). The District Court rejected these undisputed but material facts when it voided the Note and made the determination that "a sale never occurred – it was a nullity". (SPA-1-17). No legal basis was given by the District Court that would substantiate voiding the Note given the undisputed facts that it was negotiated, signed and delivered to Ramar.

It is also undisputed that the clear language in the Purchase Order referred to the Tadano crane as a trade-in, and acknowledged, as the parties envisioned, that it became part of CraneCon's inventory as more particularly stated in the repurchase obligation provision. (A-252; A-510). The District Court rejected these undisputed, but material facts when it found that there was "no sale of the Tadano crane, and CraneCon never had any interest in the crane to convey to FFCI." (SPA-13). The District Court contradicted itself further by acknowledging that the

Purchase Order referred to the trade-in of the Tadano crane, but then found that the "transfer of the Tadano crane from Ramar to CraneCon was plainly envisioned as an outright sale…and that is what occurred here."  (SPA-9).  Then, the District Court determined that what transpired was an "abortive, unconsummated sale of the Tadano crane from Ramar to CraneCon."  (SPA-10).  No factual or legal basis was given by the District Court to support these findings.  (SPA-1-17).

It is undisputed by the parties that in June, 2010 Ramar paid $26,000.00 in sales tax for its purchase of the Liebherr crane.  (A-206).  As stated previously, said amount was based upon the sales price for the Liebherr crane less the value of and trade-in of the Tadano crane.  (A-252-253; A-358-360; A-510-511).  Contrary to this undisputed but material fact, the District Court determined that the tax form simply reflected what the parties "anticipated" would happen.  (SPA-16).  What is missing from the District Court's analysis is the fact that the tax form was filed by Ramar after the Note matured and almost three (3) months after the Purchase Order and Note were signed and delivered by CraneCon, and after FFCI made demand for possession of the respective cranes.  (A-206-207).  More importantly, the District Court ignored CraneCon's invoice that was accepted by Mr. Raetz in July 12, 2010 showing the trade-in of the Tadano crane.  (A-614-615).  As of July 2010, Ramar believed it had traded in the Tadano crane for a credit of $450,000.00 (A-614-615).  It is also undisputed by the parties that Ramar filed U.C.C. financing

35

statements in August, 2010 claiming an interest in the Tadano crane. (A-210; A-343-347). The District Court rejected this undisputed, but material fact and found that it was not remarkable for Ramar, after receiving FFCI's demand letter, to take steps to protect its interest in the Tadano crane. (SPA-16). What was remarkable, however, is that Ramar would decide to take steps to protect its interest in the Tadano crane even though it believed it still owned the Tadano crane. There is no legal basis for attempting to perfect its security interest unless it believed it transferred the Tadano crane to CraneCon, and the District Court failed to provide any legal basis that would support these findings.

## CONCLUSION

For all of the reasons set forth above, the Decision of the District Court should be reversed insofar as it granted summary judgment in favor of Ramar and dismissed all of FFCI's claim against Ramar.

Dated: September 30, 2014          Respectfully submitted,
      Albany, New York          DEILY & GLASTETTER, LLP

               By:    /s/ Jonathan D. Deily
                     Jonathan D. Deily, Esq.
                     Stacey M. Metro, Esq.
                     Mark D. Glastetter, Esq.
                     *Attorneys for Plaintiff/Appellant*
                     8 Thurlow Terrace
                     Albany, New York 12203
                     Telephone: (518) 436-0344
                     jdeily@deilylawfirm.com
                     smetro@deilylawfirm.com
                     mglastetter@deilylawfirm.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

I hereby certify pursuant to Fed. R. App. P. 32(a)(7) that the attached brief is proportionally spaced, has a typeface of Times New Roman, 14 point, and contains 8,737 words (excluding, as permitted by Fed. R. App. P. 32(a)(7)(B), the corporate disclosure statement, table of contents, table of authorities, and certification of compliance), as counted by the Microsoft Word processing system used to produce this brief.

Dated:  September 30, 2014
  Albany, New York                         /s/ Stacey M. Metro
                                       Stacey M. Metro, Esq.

# Special Appendix

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

                                                              **Page**

Decision and Order of the Honorable David G.
    Larimer, dated May 12, 2014................................   SPA-1

Default Judgment, filed May 13, 2014 .....................   SPA-18

Stipulation and Order of Dismissal, dated
    June 3, 2014 ...........................................................   SPA-19

Judgment, filed June 4, 2014 ....................................   SPA-21

SPA-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FINANCIAL FEDERAL CREDIT, INC.,

                       Plaintiff,

                                               DECISION AND ORDER

                                               10-CV-6491L

                  v.

CRANE CONSULTANTS, LLC,
RAMAR CRANE SERVICES, LLC,
RAMAR STEEL SALES, INC.,
RAMAR STEEL ERECTORS, INC.,

                       Defendants.

_____

      This action involves a series of transactions involving the sale of two construction cranes, and the financing of those sales.  Plaintiff Financial Federal Credit Inc. ("FFC") has sued Crane Consultants, LLC ("CraneCon"), and Ramar Crane Services, LLC, Ramar Steel Services, Inc., and Ramar Steel Erectors, Inc. (collectively "Ramar").[1]  Ramar has filed a cross claim against CraneCon.

      FFC has moved for "partial" summary judgment granting it declaratory relief on its claims against Ramar.  (Dkt. #95.)  FFC has also moved for a default judgment against CraneCon.  (Dkt. #96.)

      Ramar has moved for summary judgment dismissing plaintiff's claims relating to the two cranes at issue (Dkt. #97, #101).  FFC has also moved to strike the second of Ramar's motions as untimely.  (Dkt. #106.)

_____

[1]Plaintiff's claims against another defendant, Bernie Klug, d/b/a Klug Crane Service, have been dismissed, pursuant to a stipulation of the parties, Dkt. #39.

## BACKGROUND

The facts leading up to this litigation involve a complex series of transactions, although most of them have been stipulated to by FFC and Ramar.  *See* Stipulation of Material Undisputed Facts ("SOF"), Dkt. #95-6.  Plaintiff FFC is a financial services company that specializes in construction equipment financing.  CraneCon is a Maryland company, which at all relevant times was engaged in the business of buying and selling cranes.  Ramar consists of three related construction companies based in Rochester, New York.

On several occasions between 2005 and 2010, FFC provided financing to CraneCon for the acquisition of equipment.  The parties agree that in consideration for that financing, CraneCon granted FFC a "blanket" security interest in virtually all of its present and future assets.  *See* SOF ¶¶ 11, 12; Plaintiff's Ex. 5 (Dkt. #95-9).  In 2005, FFC filed a financing statement in Maryland, perfecting its interest.  *See* Dkt. #95-9 at 29.

In January 2010, FFC extended credit to CraneCon to enable it to purchase a certain crane ("the Liebherr crane"), in the amount of $660,750.  CraneCon and FFC agreed that FFC would have a security interest and lien on the Liebherr Crane.  FFC filed financing statements in Maryland dated January 19 and February 2, 2010, identifying the Liebherr crane as collateral.  *See* SOF ¶¶ 19, 20.

CraneCon reached an agreement to buy the crane from another company, Crane & Rigging, in February 2010.  CraneCon paid Crane & Rigging a $20,000 deposit on or about February 3, 2010, and eventually paid the balance of the amount due under the contract.

As this transaction was occurring, however, CraneCon also was negotiating with Ramar for the sale of the Liebherr crane from CraneCon to Ramar.  In March 2010, Ramar and CraneCon entered into an agreement for Ramar's purchase of the Liebherr crane.  The terms of the agreement were set forth in a purchase order (Dkt. #95-7 at 42).  The purchase price was set at $775,000, with payment in full due prior to delivery.

The purchase order contained some additional terms, however, which are at the heart of the dispute in this case.  First, the purchase order provided (in what is sometimes referred to as the "buy-back" provision) that Ramar, at its option, and upon notice given by April 1, 2011, could return the Liebherr crane to CraneCon for $715,000, if certain conditions were met.  Those conditions generally related to whether, and as of what date, "the traded in Tadano crane remain[ed] in [CraneCon]'s inventory ... ."  Dkt. #95-7 at 42.  The Tadano crane was a crane that was owned by Ramar, which had purchased the Tadano crane in 2004.

The purchase order for the Liebherr crane further stated that:  (1) the price of the Tadano crane was $450,000; (2) CraneCon would give Ramar a 45-day promissory note in that amount, secured by the note and the Tadano crane; and (3) the note would be interest-free until May 15, 2010, and bear eight percent interest thereafter.  *Id.*  On the face of it, then, the purchase order called for Ramar to buy the Liebherr crane from CraneCon for $775,000, which was payable in full prior to delivery, and for CraneCon to buy the Tadano crane from Ramar for $450,000, secured by a promissory note and the Tadano crane itself.

Although the purchase order used the term "traded in" with respect to the Tadano crane, the parties did not in fact carry out a simultaneous swap of the two cranes.  In late March 2010, Ramar sent CraneCon the entire purchase price of the Liebherr crane and some associated equipment (which brought the total price up to $796,000).  CraneCon then delivered the Liebherr crane to Ramar.

CraneCon also gave Ramar the $450,000 promissory note called for in the purchase order for the Tadano crane, but it never paid off that note.  Ramar made no demands for payment of the note, and never delivered the Tadano crane to CraneCon.  From the record, it appears that the Tadano crane remains in Ramar's possession to this day.  In August 2010, Ramar also filed a UCC-1 financing statement with respect to the Tadano crane.  *See* Dkt. #95-9 at 26-30.

To complicate matters further, both CraneCon and Ramar obtained financing with respect to these transactions.  Ramar financed its purchase of the Liebherr crane in part with a $350,000 loan from M&T Bank ("M&T"), which is not a party to this action.  *See* Aff. of Anthony Randall (Dkt.

#7) ¶¶ 35-37.  Ramar has done business with M&T for some years, and in 2006, Ramar renewed a prior agreement with M&T granting M&T a blanket security interest in Ramar's assets.  *See id.* ¶ 9.  Ramar owned the Tadano crane at the time it renewed that security agreement.

In addition, on June 29, 2010, CraneCon entered into a loan agreement with FFC, in the principal amount of $400,750.  This was apparently intended to provide CraneCon with the funds necessary to purchase the Tadano crane pursuant to the purchase order agreement between CraneCon and Ramar.  FFC subsequently filed a financing statement with the State of Maryland identifying the Tadano crane as collateral.  SOF at 14.

CraneCon defaulted on its loan from FFC, however.  That default consisted of outright nonpayments of amounts due, as well as "bounced" checks.  SOF ¶¶ 101-104.  FFC subsequently accelerated the balance of its loans to CraneCon.

FFC then filed this action, seeking judgment against CraneCon and Ramar, both for money damages, and for replevin with respect to both the Liebherr and Tadano cranes, based on FFC's security interest in CraneCon's assets.

In the amended complaint (Dkt. #51), FFC asserts thirteen claims:  (1) replevin, seeking to obtain possession of its claimed collateral (principally the Liebherr and Tadano cranes); (2) breach of contract, against CraneCon, in the amount of roughly $1,678,000; (3) a claim under Maryland law for damages in the amount of $283,501.04, based on CraneCon's issuance of a bad check to FFC in that amount; (4) unjust enrichment, based on Ramar's retention and use of both the Liebherr and Tadano cranes; (5) conversion and "wrongful detention," based on the argument that Ramar has converted FFC's collateral to its own use; (6) negligent misrepresentation (this claim is asserted against CraneCon only); (7) fraud, alleging that both CraneCon and Ramar made false material representations to FFC; (8) intentional interference with contract, alleging that Ramar interfered with the agreements between FFC and CraneCon; (9) constructive trust, asserting that the collateral should be held in trust for FFC; (10) fraudulent conveyance, alleging that any transfer of the claimed collateral was fraudulent and invalid; (11) conspiracy, based on the allegation that CraneCon and

Ramar have conspired together to commit the wrongful acts alleged in the other counts; (12) a claim for declaratory relief, to the effect that FFC's security interest in the two cranes at issue is superior to that of the defendants; and (13) a claim for attorney's fees, costs and expenses.

FFC now seeks "partial" summary judgment granting it certain declaratory relief. (Dkt. #95.) The gist of the relief sought is a declaration that FFC's security interest in both cranes is superior to Ramar's. FFC also has moved for a default judgment against CraneCon, based on CraneCon's failure to retain counsel and to respond to FFC's discovery requests. (Dkt. #96.)

Ramar has cross-moved for summary judgment dismissing all of FFC's claims. Ramar has moved separately as to the Tadano and Liebherr cranes (Dkt. #97, #101), but combined, these two motions effectively seek dismissal of all of FFC's claims against Ramar.

FFC has also moved to strike Ramar's cross-motion regarding the Liebherr crane. (Dkt. #106.) FFC contends that Ramar's motion is untimely, because it was filed after the Court's deadline for dispositive motions. *See* Dkt. #94. Ramar contends that the motion was necessitated by FFC's own motion for summary judgment as to the Liebherr crane, which was filed on the last day for dispositive motions.

## DISCUSSION

### I. Plaintiff's Motion for Default Judgment against Crane Consultants

At oral argument on the pending motions, the Court granted FFC's motion for a default judgment against CraneCon, and directed plaintiff's counsel to submit proof of FFC's damages.[2] FFC has since submitted proof that its damages, as to CraneCon, total $1,134,938.25.

---

[2]The Court previously granted a motion by CraneCon's then-attorney to withdraw as counsel, based on CraneCon's long-term failure to pay its retained counsel or even to communicate with counsel. *See* Dkt. #58, #79.

That proof includes an affidavit of FFC's vice president, Andrew Remias, and an affirmation of its attorney, Jonathan D. Deily, Esq., setting forth the basis for that claim. *See* Dkt. #110, #111. FFC calculates the payoff amount as of April 7, 2014 to be $908,225.07. Together with attorney's fees and costs, the total judgment amount sought comes to $1,134,938.25. FFC also seeks per diem interest of $236.44 from April 7, 2014 to the date of judgment. *See* Andrew Remias Aff. (Dkt. #11) at 4.

Having reviewed those submissions, I find that they are adequately documented, and the Court will enter judgment for FFC in the amount requested, as set forth in the Conclusion of this Decision and Order.

## II. Plaintiff's Motion to Strike

Before turning to FFC's and Ramar's motions for summary judgment, the Court must address FFC's motion (Dkt. #106) to strike Ramar's cross-motion for summary judgment as to the Liebherr crane (Dkt. #101). The basis for FFC's motion is that Ramar's motion was not filed until June 14, 2013, several weeks after the May 3, 2013 deadline for dispositive motions. *See* Dkt. #94.

As Ramar notes, there is authority that a motion to strike a motion for summary judgment is procedurally improper. *See Martin v. Fort Wayne Police Dep't*, No. 11-CV-403, 2014 WL 1031195, at *2 (N.D.Ind. Mar. 17, 2014) (noting that "Rule 12(f) provides that a district court 'may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter,'" but stating that "a summary judgment motion is not a pleading"); *Morroni v. Gunderson*, 169 F.R.D. 168, 170 (M.D.Fla. Oct. 28, 1996) (emphasis added).

To some extent, this is a matter of semantics. While a motion to strike may be an improper vehicle for FFC to raise its arguments concerning Ramar's motion about the Liebherr crane, the Court has nonetheless considered the substance of those arguments. I treat FFC's motion to strike, then, simply as part of its opposition to Ramar's motion.

To the extent that FFC asks the Court to deny Ramar's motion as untimely, I will deny that request. While the Court did set May 3, 2013 as the deadline for dispositive motions, the arguments

raised in Ramar's cross-motion concerning the Liebherr crane are in large part coextensive with those raised in Ramar's (timely) response to FFC's own motion for summary judgment as to the Liebherr crane. Since the issues raised in both motions are substantially identical, I see no prejudice to FFC in allowing Ramar to proceed with its cross-motion. *See Andretti v. Borla Perf. Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005) (district court correctly found no prejudice by allowing defendant's late filing of motion for summary judgment, because there was no indication that the outcome of the motion would have been different had defendant filed it before the deadline).

**III. Parties' Motions for Summary Judgment**

The parties not only agree on most of the pertinent facts, but on much of the relevant law as well. They principally differ about how the law should be applied to the facts.

The various transactions here are generally governed by the Uniform Commercial Code ("UCC").[3] Section 9-201(a) states that "[e]xcept as otherwise provided in this chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Section 9-203(b) also states that in general, a security interest is enforceable against the debtor and third parties with respect to the collateral only if certain conditions have been met. Those conditions include the signing of a security agreement, the giving of value by the secured party to the debtor, and the debtor's acquisition of rights in the collateral. *Id.*

As explained below, the parties differ over some aspects of those principles (for example, concerning whether FCC gave "value" to CraneCon with respect to the collateral), but where they principally part ways is over UCC § 9-320. That section provides that in general, "a buyer in [the] ordinary course of business ... takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." FFC contends that with respect to the transactions here, Ramar never acquired the status of a buyer in the ordinary course of business ("BIOC") because the contract at issue, as memorialized by the purchase order between

---

[3]The parties disagree as to whether New York or Maryland law should govern here, but as will be seen below, the Court has found no relevant difference between the two.

CraneCon and Ramar, was so unusual, if not unique, as to take it out of the realm of contracts in the "ordinary course of business."

Under § 1-201(9) of the UCC,

"Buyer in ordinary course of business" means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices.

N.Y. U.C.C. § 1-201(9); Md. Comm. L. § 1-201(9).  Here, FFC contends that the purchase order between CraneCon and Ramar did not comport with the usual practices in the crane industry, and that Ramar therefore cannot be considered a BIOC.

In support of that contention, FFC has submitted a report by its expert witness, John J. Hanretty, who has been involved in the buying and selling of cranes since 1985.  (Dkt. #95-4.)  He opines that the contract between CraneCon and Ramar was outside the norm in two major respects. First, he contends that the buy-back provision allowing Ramar to return the Liebherr crane to CraneCon is highly unusual.

Hanretty also asserts that the "deferred trade-in" provision concerning the Tadano crane is outside the norm in the crane industry.  Hanretty states that trade-ins are not unusual *per se*, but he opines that they generally involve a literal trade, with one party receiving a credit toward its purchase price.

As both sides agree, the agreement between Ramar and CraneCon was not like that.  It called for two distinct transactions, involving the Liebherr and Tadano cranes.  That is reflected in both the purchase order and the parties' actual behavior.  There was no swap of the two cranes; Ramar paid cash for the Liebherr crane, which was delivered to it shortly after the purchase order was signed. The sale of the Tadano crane from Ramar to CraneCon was contemplated in the agreement, but it never came to fruition.  As evidenced by the parties' behavior, the transfer of the Tadano crane was also not a condition precedent of the sale of the Liebherr crane.

The parties differ over their characterization of this arrangement.  FFC contends that the purchase order set forth a single transaction, which included a "deferred trade-in" of the Tadano crane.  FFC claims that this arrangement was highly unusual.

Ramar, however, asserts that the purchase order set forth two discrete, independent sales: a sale of the Liebherr crane from CraneCon to Ramar, and a sale of the Tadano crane from Ramar to CraneCon.  In Ramar's view, neither sale depended on the other.

The purchase order did refer to a "trade-in" of the Tadano crane, but the prospective transfer of the Tadano crane from Ramar to CraneCon was plainly envisioned as an outright sale by Ramar to CraneCon, and that is what occurred here.  The sale of the Tadano crane, even if characterized as a "trade-in," was not a necessary condition of the sale of the Liebherr crane.  The two sales were not required to be simultaneous or dependent on each other, as evidenced by the fact that the Liebherr crane was transferred to Ramar even though the Tadano crane had not yet been (and never was) transferred to CraneCon.

On the facts before me, then, it makes more sense to analyze these as two independent, albeit related transactions.  Ramar and CraneCon agreed on two separate sales; the terms of the sales were simply set forth in the same document.  The two sales should therefore be assessed independently, with due regard for their relationship to each other under the terms of the purchase order.

As to the Liebherr crane, FFC contends that the "buy-back" provision in the purchase order, which allowed Ramar to return the Liebherr crane to CraneCon, under certain conditions, was so unusual that the entire transaction was not in the ordinary course of business.  FFC asserts that this transaction did not "comport[] with the usual or customary practices in the kind of business in which the seller [wa]s engaged or with the seller's own usual or customary practices."

I begin this analysis by noting that CraneCon was in the business of buying and selling cranes.  In addition, there is no evidence that at the time of the transaction, Ramar knew of any liens against the Liebherr crane, or that Ramar otherwise acted in bad faith.  Those facts alone do not answer the question whether Ramar was a BIOC, but they do provide important background.  Whether this particular transaction was made in the ordinary course of business is a separate issue,

but CraneCon and Ramar themselves were plainly an "ordinary" seller and purchaser, respectively, and were free to structure the deal in any way they saw fit.

What the buy-back provision stated was that Ramar had the right to sell the Liebherr crane back to CraneCon for $715,000, up to April 1, 2011, subject to one condition:  Ramar could not force CraneCon to buy back the Liebherr crane prior to March 1, 2011, if CraneCon had the Tadano crane in its possession.  Thus, if CraneCon did *not* have the Tadano crane in its possession, Ramar could force CraneCon to buy back the Liebherr crane at any time prior to April 1, 2011.  Between March 1 and April 1, 2011, CraneCon would be obligated to accept a return of the Liebherr crane, even if CraneCon had possession of the Tadano crane.

In considering this provision, it should be borne in mind that it never did come into play.  CraneCon never took possession of the Tadano crane, and Ramar never sought to sell the Liebherr crane back to CraneCon.  Thus, the so-called buy-back provision had no practical effect.

The same could be said of the trade-in provision.  As this deal unfolded, what took place was a straight sale of the Liebherr crane to Ramar, as well as an abortive, unconsummated sale of the Tadano crane from Ramar to CraneCon.  There was no buy-back, and ultimately no trade-in, deferred or otherwise.  CraneCon, which was in the business of buying and selling cranes, simply sold the Liebherr crane to Ramar, which was in the construction business.  That is the only actual sale that occurred.  *See* UCC § 2-106(1) (defining a "sale" as "the passing of title from the seller to the buyer for a price").  That the contract contemplated that some other events would or might occur does not alter that fundamental fact.

Aside from that, FFC insists that the trade-in and buy-back provisions of the contract were simply not customary or standard within the crane industry.  With respect to the trade-in provision, Anthony Randall, Ramar's chief executive officer, testified that although Ramar "had never [before] taken a promissory note for a trade-in, [Ramar] didn't look at it as a trade-in.  We paid for the Liebherr in full."  Randall Depo. (Dkt. #101-2) at 53.

CraneCon's owner, Harry Lawrence, testified at his July 27, 2012 deposition that he viewed the agreement as calling for a "transaction for the Liebherr with a trade-in of the Tadano," Lawrence

Case 6:10-cv-06491-DGL-MWP   Document 112   Filed 05/12/14   Page 11 of 17

Depo. (Dkt. #101-2) at 149, and he stated that CraneCon had used this sort of arrangement roughly five to ten percent of the time. *Id.* at 212.

As to the "buy-back" provision, Lawrence testified that he believed CraneCon had used a similar provision before. He stated that this provision was his idea, and that it was intended "to take away angst in purchasing." *Id.* at 144, 145. He added that "once an offer like that is on the table, it tends to be part of every other negotiation [from] there out." *Id.* at 145. Lawrence agreed that "the terms of any particular deal vary transaction by transaction," and that "there's no single standard practice" for such deals. *Id.* at 141.

Lawrence also signed an affidavit on October 25, 2010 (Dkt. #27), in which he stated that the deal between CraneCon and Ramar "was not a customary or ordinary business transaction of Crane Consultants, LLC" because of the trade-in and buy-back provisions. *Id.* ¶ 13. He testified at his deposition that this affidavit was prepared by FFC or its counsel, based on information that he provided. *Id.* at 50, 198.

After considering all the evidence before me, I conclude that the deal here between CraneCon and Ramar meets the standard under UCC § 1-201(9) as a sale that "comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices." I further find that Ramar purchased the Liebherr crane as a BIOC, and that it therefore took the Liebherr crane free of any security interest held by FFC.

The fact that some aspect of the contract may have been somewhat unusual does not take it outside the scope of § 1-201(9). The purpose of "BIOC protections [is to] facilitate commerce by assuring that good title is acquired, notwithstanding a prior lien. A buyer takes subject to the security interest only if the buyer knows that the sale violates a term in an agreement with the secured party." *In re SemCrude, L.P.*, 504 B.R. 39, 62 (Bank. D.Del. 2013). The UCC is not intended to lay hidden traps for buyers and sellers who agree in good faith to structure a deal in what may be an unusual way.

There is no proof here that this sale did violate FFC's rights, nor any evidence of bad faith in Ramar's purchase of the Liebherr crane. The parties agree that when CraneCon delivered to

- 11 -

Ramar the certificates of title for the Liebherr crane and associated equipment, the title listed no liens against those items. SOF ¶ 73. Randall himself states that prior to this lawsuit, he had no knowledge that FFC had claimed a security interest in the Liebherr crane, Dkt. #7 ¶ 39, and plaintiff has submitted no evidence to the contrary.

Buyers and sellers are free to structure deals as they see fit. That a particular contract includes certain terms that are unusual, or even unique to that transaction, does not render the buyer anything other than a BIOC. Section 1-201(9) itself gives the parties some leeway, stating that "[a] buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a pre-existing contract for sale."[4]

It also bears repeating that the UCC explicitly provides that a BIOC "takes free of a security interest created by the buyer's seller, *even if the security interest is perfected and the buyer knows of its existence*." UCC § 9-320. In addition, a BIOC is a "person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods ... ." In other words, knowledge of the *security interest* does not preclude BIOC status. Only knowledge that the sale itself violates another person's rights (such as where the buyer knows that the seller does not hold legal title to the item being sold) prevents the buyer from being considered a BIOC. *See Chen v. New Trend Apparel, Inc.*, __ F.Supp.2d __, 2014 WL 1265916, at *36 (S.D.N.Y. Mar. 27, 2014) (adding that "good faith in the context of the U.C.C. refers to 'honesty in fact in the conduct or transaction concerned'") (citing N.Y. U.C.C. § 1-201(19)); *Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 914 F.Supp.2d 529, 546 (S.D.N.Y. 2012) ("A buyer bears the burden of demonstrating good faith, but, in the absence of allegations to the contrary, there is a presumption of good faith in

---

[4] I do not believe that Lawrence's affidavit creates a genuine issue of material fact in this regard. His deposition testimony explained the origin and purpose of the so-called trade-in and buy-back provisions, and viewing the record as a whole, I conclude that the transaction qualifies as having taken place in the ordinary course of business. I also note that no jury demand has been made in this action, so the Court is the ultimate factfinder in any event. *See In re Western Limestone, Inc.*, 538 F.3d 858, 868 (8th Cir. 2008) (faced with contradictory affidavits, bankruptcy court properly found transactions at issue to be usual and customary in the industry, and did not err in crediting one affidavit over the other).

commercial transactions"). There is no evidence here that Ramar even knew of FFC's claimed security interest in the Liebherr crane at the time of the sale, or that the sale itself violated FFC's rights, much less that Ramar *knew* that the sale violated FFC's rights.

As to the Tadano crane, FFC's claims fail for a number of reasons. For one thing, CraneCon never obtained title to, or possession of the Tadano crane. CraneCon never made any payments on the promissory note that it had given Ramar, and the contemplated sale never occurred; it was, in the end, a nullity. There was thus no sale of the Tadano crane, and CraneCon never had any interest in that crane to convey to FFC in the first place. *See* UCC § 2-106(1) (defining a "sale" as "the passing of title from the seller to the buyer for a price").

The parties also dispute whether FFC gave "value" to CraneCon with respect to the Tadano crane. Under § 9-203(b) of the UCC, a condition of enforceability of a security interest as against the debtor and third parties is the giving of value by the secured party to the debtor.

FFC does not seem to deny that it never did fund the loan that CraneCon had sought to enable its purchase of the Tadano crane, and that FFC did not include any balance owed on that loan when it accelerated CraneCon's debt. *See* SOF ¶¶ 91-108. FFC, however, contends that it provided value to CraneCon through its longstanding relationship with CraneCon, which encompassed the financing that CraneCon used to fund its purchase of the Liebherr crane. Since CraneCon granted FFC a blanket security interest in its assets, FFC argues, FFC acquired a security interest in the Tadano crane when CraneCon and Ramar entered into the purchase order and CraneCon gave Ramar the promissory note for the Tadano crane.

FFC's convoluted argument begs the question, however, by assuming that CraneCon had some rights to the Tadano crane to begin with. As stated, CraneCon never obtained possession of the crane or title to the Tadano crane, CraneCon never paid off the note that it issued to Ramar, and the sale was never consummated.

The parties also agree that if FFC has some interest in the Tadano crane, Ramar can defeat that interest if it obtained a purchase money security interest ("PMSI") in the Tadano crane. Section

9-324 of the UCC provides that a perfected PMSI generally has priority over other security interests.

*See Arthur Glick Truck Sales, Inc. v. Stuphen East Corp.*, 914 F.Supp.2d 529, 536 (S.D.N.Y. 2012).

> As the New York Court of Appeals has explained,

> A security interest in goods is a purchase-money security interest ... to the extent that the goods are purchase-money collateral with respect to that security interest" (UCC 9-103[b][1]). Purchase-money collateral is defined as "goods or software that secures a purchase-money obligation incurred with respect to that collateral" (UCC 9-103[a][1]). A purchase-money obligation is "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used" (UCC 9-103[a][2]). The UCC therefore establishes two ways that a purchase-money obligation may arise: (1) where the obligor–the debtor–incurs an obligation as all or part of the "price" of the collateral, or (2) where "value" is given to enable the debtor to acquire the collateral.

*In re Peaslee*, 13 N.Y.3d 75, 80 (2009) (alterations omitted).  *See also* Md. Comm. L. § 9-103 (setting forth substantially identical provisions).

Ramar contends that there never was *any* effective sale of the Tadano crane by it to CraneCon, but it also argues that even if the purchase order were deemed to have effected a sale of the Tadano crane, then Ramar must be deemed to have obtained a PMSI in the Tadano crane.  Ramar contends that the purchase order's provision that the purchase was secured by the crane itself was sufficient to give rise to such an interest.

FFC asserts that Ramar's reliance on § 9-324 is misplaced because the Tadano crane was inventory of CraneCon.  Under § 9-324(a), "a perfected purchase-money security interest in goods *other than* inventory ... has priority over a conflicting security interest in the same goods ... ." (Emphasis added.)  Under § 9-324(b), "a perfected purchase-money security interest in inventory [generally] has priority over a conflicting security interest in the same inventory ...," but only if certain conditions are met, including the perfection of the PMSI, and proper notice to the holder of the conflicting security interest.  FFC argues that Ramar never complied with the notification requirements of § 9-324.

As explained above, however, the Tadano crane never became a part of CraneCon's inventory.  The UCC defines "inventory" as

> goods, other than farm products, which:

(A) Are leased by a person as lessor;
(B) Are held by a person for sale or lease or to be furnished under a contract of service;
(C) Are furnished by a person under a contract of service; or
(D) Consist of raw materials, work in process, or materials used or consumed in a business.

Md. Comm. L. § 9-102(48); N.Y. U.C.C. § 9-102(48).

Under that definition, the Tadano crane never was part of CraneCon's inventory.  FFC contends that "the Tadano Crane is inventory of CraneCon because it is a good that is held for sale or lease to be furnished under contract by CraneCon since CraneCon is in the business of buying and selling cranes."  FFC's Mem. (Dkt. #100-2) at 10.

Once again, FFC has assumed a premise of its own argument.  CraneCon could not have held the Tadano crane for sale or lease, because CraneCon never took possession of or title to the crane. The crane never became CraneCon's to sell.

In addition, as to the notification requirement,  the Official Comment to § 9-324 explains that "[i]f the debtor never receives possession, the five-year period never begins, and the purchase-money security interest has priority, even if notification is not given."  Thus, the notification provision does not apply here.

Furthermore, § 9-324(g) provides that "[i]f more than one security interest qualifies for priority in the same collateral ... [,] a security interest securing an obligation incurred as all or part of the price of the collateral has priority over a security interest securing an obligation incurred for value given to enable the debtor to acquire rights in or the use of collateral ... ."  Here, CraneCon's ostensible purchase of the Tadano crane was secured by the crane itself.  Any interest in the Tadano crane held by FFC was based on an obligation arising from FFC's giving of value to CraneCon to enable CraneCon to purchase the crane.  Thus, Ramar's interests would trump those of FFC under this provision as well.

FFC also contends that certain documents filed by Ramar with New York State, concerning the registration of the Liebherr crane, and taxes with respect to the sale of that crane, implicitly reveal that Ramar considered the Tadano crane to have been conveyed to CraneCon.  Similarly, FFC argues that Ramar's filing of UCC-1 financing statements in New York and Maryland with respect

to the Tadano crane shows that Ramar understood that the Tadano crane had become a part of CraneCon's inventory.

These arguments are based on a strained interpretation of the facts, which do not support FFC's position. The registration and tax documents–which on their face concern the Liebherr crane–at most indicate what all the parties agree on: that it had been *anticipated* that CraneCon would pay Ramar $450,000 for the Tadano crane. But the simple fact is, that never happened.

As to the UCC-1 financing statements, FFC acknowledges that they were filed only after Ramar became aware of FFC's assertion of an interest in the Tadano crane. That Ramar took steps to attempt to protect its interests, once it learned that FFC was claiming some interest in the Tadano crane, is hardly remarkable. Those filings do not suggest that Ramar believed that the Tadano crane had been conveyed to CraneCon, much less that FFC had a superior interest in that crane.

## CONCLUSION

Plaintiff's motion for partial summary judgment (Dkt. #95) is denied.

Plaintiff's motion for a default judgment as to Crane Consultants, LLC (Dkt. #96) is granted, and the Clerk of the Court is hereby directed to enter judgment in favor of plaintiff and against Crane Consultants, LLC, in the amount of $1,134,938.25, plus $236.44 interest per day from April 7, 2014 to the date of entry of judgment.

The motions for partial summary judgment filed by defendants Ramar Steel Sales, Inc., Ramar Crane Services, LLC, and Ramar Steel Erectors, Inc. (collectively "Ramar") (Dkt. #97 and #101) are granted, and plaintiff's claims against Ramar are dismissed.

The Court further finds and declares that: (1) Ramar purchased the Liebherr crane at issue here as a buyer in the ordinary course of business, and that Ramar took the Liebherr crane free of any security interest held by plaintiff; and (2) Ramar's interest in the Tadano crane is likewise superior to any interest claimed by plaintiff.

**SPA-17**

Plaintiff's motion to strike Ramar's cross-motion for summary judgment (Dkt. #106) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 12, 2014.

SPA-18

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western \_\_\_\_\_ District of \_\_\_\_ NY \_\_\_\_

| | | |
|---|---|---|
| FINANCIAL FEDERAL CREDIT, INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    10-cv-6491 |
| CRANE CONSULTANTS, LLC, | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☐ other: _____
_____ .

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision
was reached.

☒ decided by Judge \_\_\_David G. Larimer_____ on a motion for \_\_default judgment\_\_
in favor of plaintiff against Crane Consultants, LLC in the amount of $1,134,938.25 plus $236.44 interest per day from April 7, 2014
to the date of entry of judgment. _____ .

Date: \_\_\_\_\_05/13/2014\_\_\_\_\_

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



FINANCIAL FEDERAL CREDIT, INC.,

                    Plaintiff,

vs.

CRANE CONSULTANTS, LLC,
RAMAR CRANE SERVICES, LLC,
RAMAR STEEL SALES, INC., and
RAMAR STEEL ERECTORS, INC.,

                    Defendants.

**STIPULATION AND
ORDER OF DISMISSAL**

**Civil Action No.:** 10-CV-6491 L

WHEREAS, defendants Ramar Crane Services, LLC, Ramar Steel Sales, Inc. and Ramar Steel Erectors, Inc. (collectively, "Ramar") have asserted against defendant Crane Consultants, LLC ("CraneCon") three cross-claims in this action ("Cross Claims"); and

WHEREAS, CraneCon has defaulted in this action, and is no longer represented by counsel (Docket #79, 112); and

WHEREAS, the Court has rendered a Decision and Order dated May 12, 2014 (Docket #112) dismissing the claims of plaintiff Financial Federal Credit, Inc. ("FFCI") against Ramar, and granting a default judgment for FFCI against CraneCon; and

WHEREAS, the only remaining unresolved claims in this action are the Ramar cross-claims against CraneCon, and Ramar desires to discontinue its cross-claims so that final judgment can be entered by the Court;

NOW THEREFORE, it is hereby stipulated by McConville, Considine, Cooman & Morin, P.C., as counsel for Ramar, that the Ramar cross-claims against CraneCon be and hereby are discontinued and dismissed without further proceedings, and the Court may enter final

judgment: (1) dismissing the Ramar cross-claims, and (2) entering judgment in favor of Ramar with respect to the claims of FFCI.

Dated: May ___30___, 2014

McCONVILLE, CONSIDINE,
COOMAN & MORIN, P.C.
*Attorneys for Ramar Defendants*

Kevin S. Cooman, Esq.

25 East Main Street
Rochester, New York 14614
Telephone: (585) 546-2500
Email: kcooman@mccmlaw.com

Upon the foregoing stipulation, it is SO ORDERED, and the Clerk of the Court is hereby directed to enter judgment in favor of Ramar dismissing the claims of FFCI, and dismissing the cross-claims of Ramar against CraneCon.

Dated: June 3, 2014

David G. Larimer
United States District Court Judge

14093.005-#1298

SPA-21

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western ____ District of ____ NY ____

|  |  |  |
|---|---|---|
| FINANCIAL FEDERAL CREDIT, INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.      10CV6491 |
| CRANE CONSULTANTS, LLC; RAMAR CRANE | ) | |
| SERVICES, LLC; RAMAR STEEL SALES, INC. & | ) | |
| RAMAR STEEL ERECTORS, INC., | ) | |
| *Defendant* | | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☐ other: _____
_____
_____ .

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision
was reached.

☒ decided by Judge ___ David G. Lariner ___ on a motion for _ n/a _
Cross-claims are dismissed as to Ramar and judgment in favor of Ramar with respect to the claims of FFCI.
_____ .

Date: ___ 06/04/2014 ___

*CLERK OF COURT*

*Michael J. Roemer*

_____
*Signature of Clerk or Deputy Clerk*

STATE OF NEW YORK   )

                           )      ss.:      **AFFIDAVIT OF SERVICE**

COUNTY OF NEW YORK   )                     **BY MAIL**

       I, Maryna Sapyelkina       , being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

       **On October 1, 2014**

deponent served the within:  **Brief and Special Appendix for Plaintiff-Appellant**

       **upon:**

**Crane Consultants, LLC**
***Defendant-Cross-Defendant-Appellee Pro Se***
**121217 Country Club Road**
**New Market, Maryland 21774**

the address(es) designated by said attorney(s) for that purpose by depositing **2**  true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on October 1, 2014**

**/s/ Maria Maisonet**                    **/s/ Maryna Sapyelkina**

        **MARIA MAISONET**             —————————————————
Notary Public State of New York
No. 01MA6204360
Qualified in Queens County
Commission Expires Apr. 20, 2017      **Job#  255679**

STATE OF NEW YORK      )
                               )       ss.:       **AFFIDAVIT OF**
COUNTY OF NEW YORK    )                        **CM/ECF SERVICE**

        I, Maryna Sapyelkina, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age.

        **On October 1, 2014**

deponent served the within: **Brief and Special Appendix for Plaintiff-Appellant**

        **upon:**

**McConville Considine Cooman & Morin PC**
***Attorneys for Defendants-Cross-Claimants-Appellees***
**25 East Main Street, Suite 400**
**Rochester, New York  14614**
**(585) 546-2500**

**Hiscock & Barclay, LLP**
***Attorneys for Defendant-Appellee***
**2000 HSBC Plaza**
**100 Chestnut Street**
**Rochester, New York  14604**
**(585) 295-4400**

via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

**Sworn to before me on October 1, 2014**


       **/s/ Maria Maisonet**                       **/s/** Maryna Sapyelkina

        **MARIA MAISONET**             _____
Notary Public State of New York
No. 01MA6204360
Qualified in Queens County
Commission Expires Apr. 20, 2017        **Job # 255679**